### GOULD *vs.* THE HUDSON RIVER RAILROAD COMPANY.

The Hudson river being a navigable stream, in which the tide ebbs and flows, the land upon its banks, below ordinary high water mark, belongs to the people of the state, in their sovereign capacity.

And where the defendants, under and in pursuance of a charter from the legislature, authorizing them to construct a railroad from New-York to Albany, entered upon the Hudson river, in front of the plaintiff's farm, and between the ordinary high and the ordinary low water mark, raised and constructed a line of solid embankment across the whole river front of said farm, about five feet in height above the ordinary high water mark, and forming a barrier to the passage of vessels, boats, &c. through the same, and laid a railroad track upon such embankment, and ran their cars thereon; without the permission or consent of the plaintiff, and without making, or offering him, any compensation for the damages sustained by him; *Held* that the legislature had not transcended its authority in making the grant to the defendants; that the defendants were authorized to do the acts complained of; and that the plaintiff had not sustained any injury for which an action would lie.

THIS was an appeal by the plaintiff from a judgment entered against him at special term, on demurrer to the complaint. The complaint alledged that the plaintiff was, and for three years past had been the owner and in the actual occupation and possession of a farm of land, lying and being situate in the town of Stockport, in the county of Columbia, and which was bounded on the north by lands of George Coventry, south by lands of Robert Harder, and west by the Hudson river; said farm extending along and having a front upon said river of about two thousand feet. That the said Hudson river is a navigable stream, in which the tide ebbs and flows from the mouth thereof, where the same enters into the sea, to a point about forty miles above the said farm of the plaintiff, and which river, being a public highway, the said plaintiff had a right to use with vessels, boats, floats and other craft, to embark thereupon from his said farm for the purpose of carrying away the produce thereof, and for the purpose of bringing manure and other materials, to and upon the same; and for a long time previous to the construction of the embankment and railroad track by the defendants, as hereinafter mentioned, had used said river for such and other lawful purposes. That in or about the month of September, one thousand eight hundred and fifty, the defendants, being a body politic and corporate, created under and by virtue of an act of the legislature of the state of New-York, entitled "An act to authorize the construction of a railroad from New-York to Albany," passed May 12, 1846, and an act of the same legislature, entitled "An act further to amend an act to authorize the construction of a railroad from New-York to Albany," passed May 12, 1846," passed February 10, 1848, and claiming to be authorized by said acts, entered upon the said Hudson river, in front of and adjacent to the said plaintiff's farm, and between the ordinary high and the ordinary low water mark of said river, and with earth and stones, and other materials, then and there in said river, and below the ordinary high water mark thereof, raised and constructed a line of solid embankment extending from a point in said river, opposite the south line, to a point in said river, opposite the north line of the plaintiff's farm,

and which said embankment was a part of a solid embankment raised and constructed by the defendants, from the city of New-York, to a point in the town of Greenbush, and county of Rensselaer, opposite the city of Albany. That the said embankment in front of his said farm, and for a long distance north and south thereof, was raised and elevated so that the surface thereof was about five feet above the ordinary high water mark of said Hudson river, and forms a complete barrier to the passage of vessels, boats, floats and other river craft through the same. That upon said embankment, the defendants had laid a continuous line of iron rail, commonly called a railroad track, extending from the city of New-York to said point in the town of Greenbush, and upon which they were running daily, and several times each day, trains of cars propelled by steam. That in consequence of said embarkment and railroad track, so raised and constructed by the defendants, he, the said plaintiff, for more than a year past, had been and was prevented from and obstructed in the passage of vessels, boats, floats and other river craft, from the said plaintiff's farm to the channel of Hudson river, and from the channel of said river to his farm, and whereby the plaintiff had been deprived by the defendants of all means of getting from his farm to said river, with vessels, boats, floats and other craft, for the purpose of removing the produce therefrom, and for other lawful purposes. And the plaintiff averred, that the defendants so entered in and upon the said Hudson river, and raised and consructed said embankment and railroad track opposite his said farm, and such continuation thereof, north and south, without the permission or consent of the plaintiff, and without compensating or offering to compensate him for the damages and injuries aforesaid, which he had suffered, and which he was then and was yet likely to suffer, as the owner and occupier of said farm, from and by means of the construction of said embankment and railroad track, and the continuation thereof. By reason whereof, the plaintiff claimed that he had sustained damages to the amount of five hundred dollars, and for which sum he demanded judgment, together with the costs of this action.

Gould *v.* Hudson River Railroad Company.

To this complaint the defendants demurred and alledged the following as the grounds or causes of demurrer—*First.* That it appeared by the complaint, that the Hudson river, wherein the defendants had raised and constructed their said embankment and railroad track, is a public navigable stream, wherein the tide ebbs and flows, and as such belongs, and every part thereof belongs to the people of the state of New-York, and no part belongs to the plaintiff. That said embankment and railroad track being raised and constructed wholly below the ordinary high water mark of said river, no action can be maintained by the plaintiff against the defendants, because (1.) No action will lie in favor of the riparian owner for merely being obstructed in the passage of vessels and boats from his land to the channel of the river, or from the channel of the river to his land. That no greater or peculiar right to the use of the river, as a public navigable stream, than that of the common citizen, attaches to the riparian owner, and, therefore, he can not complain of any impediment intervening the channel of the river and his land, so long as it does not prevent his navigating the river as a common citizen. (2.) Because the convenience of ferry, of fishing and of embarking from his land upon such river, or of landing therefrom with vessels and boats, are not absolute rights, but merely benefits or advantages, emanating from his riparian ownership, and no action will lie by him in virtue of his said riparian ownership merely, for a destruction of such benefits or advantages. (3.) That in the absence of an express grant from the state, or a grant presumed by prescription, the riparian owner can not complain, as such, of the occupancy of the bed, or the waters of the river in front of his land. That the people being the proprietors of the soil and waters of the river, they alone can object to such occupancy, or remove any obstructions therein. *Second.* That it appeared by the complaint, that the said embankment and railroad track was raised and constructed by the defendants, under and by the authority and permission of the people of the state of New-York, derived from and given by two acts of the legislature of said state, referred to in said complaint, which said two acts, and the authority and permis-

sion derived therefrom, gave to the defendants the right to take, use and occupy the land under the waters of the Hudson river. That such right, so derived, is paramount and superior to any possessed by the plaintiff, either as riparian owner, or as a citizen. That every right of the riparian owner or the citizen to the use of a navigable tide water river for navigation, fishing, ferrying or otherwise, is subordinate and subservient to the public use of such river. That such rights of the riparian owner, or the citizen, reside in him only during the pleasure of the sovereign will, and can, at any time, be taken from him by the exercise of that will. And that the people being the proprietors of the river, and the river's bed, have, in their sovereign capacity, through their legislature, granted to the defendants the right to construct their said railroad in the Hudson river ; which grant, though it deprive the riparian owner and the citizen of all use, benefit and advantage of the river for navigation or otherwise, they, the people, as the sovereign power, could lawfully and constitutionally make ; it being public property thus devoted to public use. *Third.* That the complaint did not state facts sufficient to constitute a cause of action.

The cause being brought to argument, upon the demurrer, at a special term of the court, judgment was given for the defendants, with costs.

*John H. Reynolds,* for the appellant. I. The plaintiff having a common right, with all the people of the state, to the use of the navigable waters of the Hudson river, for navigation, fishery and other lawful purposes, may, as a common citizen, maintain an action for a total destruction, or a disturbance of that right, for any other purpose than the improvement of the navigation of the river for the public welfare. (1.) Because the public dominion over navigable waters is not of such a character as to authorize the sovereign power, to totally destroy the common rights of navigation, fishery, &c. While the sovereign holds the legal title in navigable waters, and the land covered by them, it is only as protector, guardian or trustee of the common or public rights therein. Every citizen has the right to navigate

Gould *v.* Hudson River Railroad Company.

and fish upon public waters, without interruption, except so far as public convenience makes such interruptions absolutely necessary. (*Angell on Tide Waters,* 21, *et seq.* 5 *Com. Dig.* 102. *Lord Fitzwalter's case,* 1 *Mod.* 105. *Constable's case,* 5 *Co. Rep.* 107. *Blundell* v. *Catterall,* 5 *Barn. & Ald.* 268. *Callis on Sewers,* 55. *Hale de jure Maris,* 11. *Brown* v. *Kennedy,* 5 *Har. & John.* 203. *Hart* v. *Hill,* 1 *Wharton, Penn.* 136. *Cox* v. *The State,* 3 *Blackf.* 193. *Gibbons* v. *Ogden,* 9 *Wheaton,* 1. *Wilson* v. *Black Bird Creek Co.* 2 *Peters,* 245. *Piscataqua Bridge Co.* v. *New Hampshire Bridge Co.* 7 *N. Hamp. Rep.* 35. *Hargrave's Law Tracts,* 11. *Warner* v. *Matthews,* 6 *Mod. Rep.* 73.) (2.) Because this common right to the use of navigable waters, for navigation and fishery, is in its legal signification like other rights of common. It is an incorporeal right, vested in and enjoyed by the citizen as an incident to his citizenship. It is a legal estate, created and sanctioned by the common law, and its destruction is injurious to the owner, and entitles him to damages. (12 *Serg. & Rawle,* 14. *Van Rensselaer* v. *Radcliff,* 10 *Wend.* 639. 3 *Kent,* 418.)

II. As riparian proprietor, the plaintiff is entitled to maintain his action; because, as the owner of the soil adjacent to navigable waters, he has certain rights in such waters and the shores covered by them, peculiar to that location, which are not enjoyed in common with the people of the state; and which are incorporeal rights, incident to his ownership of the land, and issuing out of it. (1.) He has the exclusive right to the shore down to the water's edge, at high water mark, and the exclusive right of embarkation from his own land, with all kinds of craft, and of using the natural shore as a landing place for his own private profit and convenience, or of erecting a wharf for a like purpose. (*Chapman* v. *Kimball,* 9 *Conn. Rep.* 40. *East Haven* v. *Hemingway,* 7 *Id.* 186. *Ball* v. *Slack,* 2 *Wharton,* 538, 541. *Bowman's Devisees* v. *Wathan,* 2 *McLean's Rep.* 381.) (2.) The sole and exclusive right of fishery on the banks of his own land, and of drawing nets and seines in connection therewith. (*Hart* v. *Hill,* 1 *Wharton,* 138. *Coolidge* v. *Williams,* 4 *Mass. Rep.* 140. *Brink* v. *Ritchmyer,* 14 *John.* 255.

*Angell on Tide Waters,* 193.    14 *Serg. & Rawle,* 71.    3 *Kent's Com.* 407.)  (3.) The sole and exclusive right to the shore, as increased by gradual accumulation by the action of the tide, or by the gradual receding of water from the shore.  (*Angell on Tide Waters,* 258.    3 *Kent's Com.* 428.    *Rex* v. *Yarborough,* 3 *Barn. & Cress.* 91.)  (4.) To sea-weed deposited on the shore below ordinary high water mark, for manure or any other useful purpose.  (*Emans* v. *Turnbull,* 2 *John.* 313.  *Phillips* v. *Rhodes,* 7 *Met.* 323.)  It follows of necessity, that if by any act the riparian owner is deprived of the beneficial use or enjoyment of any of these several rights, he sustains an injury which is peculiar to himself alone, and for which he is entitled to compensation.  (*Angell on Tide Waters,* 171, 174.    *Ball* v. *Slack,* 2 *Wharton,* 538.    *Bowman's Devisees* v. *Wathan,* 2 *McLean's Rep.* 381.    *Harrison* v. *Sterett,* 4 *Har. & McHen.* 540.    *Dodge* v. *The Co. Commissioners,* 3 *Metcalf,* 380.  *Bell* v. *Hull and Selby Railroad Co.* 6 *Mees. & Welsb.* 699.  *East Haven* v. *Hemingway,* 7 *Conn. Rep.* 186.    3 *Kent's Com.* 418.)

III. The complaint alledges a complete destruction of all the rights and privileges of the plaintiff as a riparian owner.  He is completely cut off from all communication between his farm and the channel, by means of any water craft.  His right of navigation, in the way he has been accustomed to use it, is completely destroyed ; and he is entitled to compensation.

IV. The defendants, by their charter, are bound to make compensation for any property required for the purposes of their road, " or which may be affected injuriously by any operation connected therewith."  (*Laws of* 1846, *p.* 257, § 10.  *Laws of* 1848, *p.* 39, § 1.)  If, therefore, the owner of any land near which the road is made, for any reason suffer injury, the defendants must make compensation.  To enable the plaintiff to maintain this action, it is not necessary that the defendants should actually use his property ; it is enough that their operations " affect it injuriously."  (*Angell on Tide Water,* 174.  *Dodge* v. *The County Commissioners,* 3 *Metc.* 380.  *Bell* v. *Hull and Selby Railroad Co.* 6 *Mees. & Welsb.* 699.  *Blood-*

*good* v. *Mohawk and Hudson Railroad Co.* 14 *Wend.* 51; *S. C.* 18 *Id.* 9.)

V. The act of the legislature authorizing the construction of the Hudson river railroad does not justify the defendants in destroying the plaintiff's right of navigation and fishery. The construction of a railroad is not a public improvement, to which the common right of the citizen to the use of navigable waters, or of the riparian owner to the privileges peculiar to him, is subservient. The right of navigation and fishery, &c. in navigable waters is subject to the sovereign power, so far only as it may be exercised to improve navigation for the common benefit of all. The legislature can not destroy these rights, by authorizing the erection of a railroad upon navigable waters, for purposes of private gain, to the peculiar injury of riparian owners, without making the injured just compensation. Such an operation is in no sense an improvement of navigable waters, but rather an obstruction of them. The plaintiff is entitled to judgment on demurrer, and the judgment of the special term should be reversed.

*C. L. Monell*, for the respondents. I. By the common law, all tide water rivers which are navigable belong, in this country, to the people. This right includes the whole of the river, and the bed of the river within the banks, up to the ordinary high water mark, and is absolute. (3 *Kent's Com.* 427. *Angell on Tide Waters*, 73. *Sir H. Constable's case*, 5 *Co. Rep.* 107.) The rule of the common law, on this subject, is recognized and adopted as the law of this state. (*Canal Commissioners* v. *The People*, 5 *Wend.* 423. *Canal Appraisers* v. *The People*, 17 *Id.* 571. *Commissioners of Canal Fund* v. *Kempshall*, 26 *Id.* 404.)

II. The river being the property of the people, a riparian owner has no other or greater right to its use for navigation, fishing, &c. than any other citizen. The fact that he may use his upland in conjunction with the water, to embark therefrom upon the water, for landing, fishing, &c. gives him no greater or better right to the river than if he did not own the shore.

(*Lansing* v. *Smith*, 4 *Wend.* 21. 5 *Iredell*, 118.) The right to use the shore in connection with the water of a river, makes the right more valuable to the riparian owner than to a person who has no such right, and the former would sustain greater damage from an interruption or destruction of a navigable river passing in front of his land, than a person who was confined to navigating the channel of the river ; but this does not change or enlarge the right to use the river. The right to navigate the public waters of the state, and to fish therein, are all public rights, belonging to the people at large. They are not the private unalienable rights of each individual. (*Per Walworth, Ch. in Lansing* v. *Smith*, 4 *Wend.* 21.) The right of the riparian owner to the shore down to high water mark, to the gradual accretion of the shore by deposit or otherwise, of fishing, ferrying, &c. gives him no individual right to the use of the river farther than he would have if he was not riparian owner. They may increase his damages if he is deprived of them, but not his rights.

III. By the act incorporating the defendants, they are constituted a body " politic and corporate," and are authorized to construct a railroad from New-York to Albany, and to occupy and use any land under the water of the Hudson river, below high-water mark. The act does not conflict with the provisions of the constitution of this state, that private property shall not be taken for public use without just compensation. The right of the citizen and of the riparian owner to navigate or otherwise use the public waters of the state is in subordination, and subservient to the right of the sovereign power to restrict and regulate the exercise of those rights, in such manner as may be deemed most beneficial to the public at large. They may be disturbed or totally destroyed at the pleasure of the people, if the ends of public policy will thereby be promoted. *Salus populi suprema lex.* The right to navigate, &c. a public river, is not " property" within the meaning of the constitution, any more than is the " elective franchise," or any other privilege of citizenship. Property means things real or personal, of which the citizen is deprived. Again. It must be " private property."

Rights of navigation, fishing, ferrying, &c. are not private, but public rights, in which the whole community are equally and alike interested. Taking away or destroying these public rights, when done by the sovereign power, for the public good, is an appendage of sovereignty conferred upon it by each citizen, and any private injury which he sustains is *damnum absque injuria*, and must be borne as a part of the price paid for the advantages of the social compact. (*Hale de jure Maris*, 6. *Rex* v. *Smith, Doug.* 425. *Williams* v. *Wilcox*, 3 *Nev. & P.* 606. *Vanderbilt* v. *Adams*, 7 *Cowen*, 349. *Wilson* v. *B. B. Creek Co.* 2 *Pet.* 245. *Lansing* v. *Smith*, 8 *Cowen*, 146. *S. C. in error*, 4 *Wend.* 21. *Canal Com'rs* v. *Kempshall*, 26 *Id.* 417.) The railroad of the defendants, being for the transportation of merchandise and passengers, is a public improvement, and for a public benefit. (*Beekman* v. *S. & S. R. R. Co.* 3 *Paige*, 45. *Bloodgood* v. *M. & H. R. R. Co.* 14 *Wend.* 54. *S. C. in error*, 18 *Id.* 9.) And property taken by a railroad company for the purposes of its incorporation, is deemed to be taken for " public use." (*Sess. Laws of* 1850, *p.* 220, § 18.) Again. The legislature has frequently assumed and exercised the right to restrict and control the citizen in the use of the private as well as the public streams of the state. They have passed laws for the preservation of fish, and prohibited fishing with fike and set nets, and limited fishing to certain periods of the day. They have passed laws regulating the navigation of our public rivers, and granted the exclusive right to individuals to establish and maintain ferries. They have incorporated bridge companies, prohibited bathing, and restricted fowling. And they have made grants of land under water to individuals. All these are restrictive or destructive of the right of the citizen ; but such rights must yield to the will of the sov ereign power, as expressed through the legislature. A grant by the commissioners of the land office of land under water, although confined by statute to the owner of the upland, is nevertheless destructive of the right of another citizen to navigate, fish in, &c. that part of the river covered by such grant. Yet the constitutionality of such grants was never doubted.

IV. It is not necessary to contend that the sovereign power

may totally destroy a navigable stream; it is not claimed in this case that the embankment of the defendants' railroad in any manner interrupts or interferes with the navigation of the channel of the river. A total destruction has, however, been held in the supreme court of the United States, to be within the constitutional power of a state government. ( *Wilson* v. *B. B. Creek M. Co.* 2 *Pet.* 245.) The destruction claimed here is only of the right of the plaintiff to embark from his land upon the water, and to return thereto, &c. Such destruction does not disturb the rights of the public, and the plaintiff has no right that he does not hold in common with every citizen of the state. A destruction, total or partial, of a navigable stream, must be such as the whole community may be affected by, as they have occasion to use the stream. If it necessarily affects but one person, and can not injure the public, no right of action arises; because the action must be founded upon the right of the citizen held in common with all other citizens. Again. The power of the legislature to control the public in the use of a navigable stream is not necessarily confined to improvements in the navigation, or for what is denominated " commercial purposes." The erection of a bridge across a navigable stream does not improve its navigation; nor does the erection of a dam for milling purposes. Yet these privileges are granted, and may be, especially if they do not wholly destroy the navigability of the stream.

V. No compensation is required by the defendants' act of incorporation to be made in a case like this. The compensation provided by section ten of said act, and by section one of the act amendatory thereof, (*Sess. Laws of* 1848, *p.* 39,) is confined to the land of individuals, their private property, which may be taken; and the words " injuriously affected" apply only where land is taken, and the adjoining land is rendered valueless, or is injured. Here, no land or property of the plaintiff is taken; and if he has no rights peculiar to himself as riparian owner, then no land of his is injuriously affected within the meaning of the defendants' charter, for which compensation should be made. If such compensation was necessary, it must be made before the defendants take possession; otherwise they would be

trespassers. (*Bloodgood* v. *M. & H. R. R. Co.* 14 *Wend.* 51.) A person owning land on the opposite side of the river might as well claim that it was injuriously affected, because of the destruction of the right of ferriage to the other shore.

VI. The act incorporating the defendants confers upon them the right to use and occupy any land under water upon the route of their railroad, belonging to the people of the state. (*Laws of* 1846, *p.* 275, § 10, *p.* 279, § 15. *Id.* 1848, *p.* 39, § 1.) The authority is not by express words, but is clearly implied. No compensation is required to be made to the people. Individuals, whose property may be taken, are to be paid, but the people provide no compensation for themselves. The act expressly authorizes the defendants to erect bridges over the creeks, navigable streams, inlets and bays, that may be crossed by their railroad. The part of the river between high and low water mark is within the meaning of the act, a bay. The crossing of bays is clearly contemplated, and the people require no compensation.

VII. In no view of this case can the plaintiff sustain his action. He has no property in the river, nor any right peculiar to himself, as riparian owner, which entitles him to the action. The defendants' railroad was constructed by the authority and permission of the people of the state, the sovereign power. The rights of the plaintiff are held by him in common with the public, and are subservient to the will of the public. He can enjoy them until public necessity or convenience renders it expedient that he should be deprived of them. This the public may do; and it is not inconsistent with the power lodged in the sovereign. The plaintiff, therefore, though he is deprived of the use of the river, as heretofore enjoyed, must yield to the power that has destroyed it. He may importune the legislature for relief, but the courts can not help him. The public character of the enterprise, the vast interest the people have in its maintenance, and the important public ends it subserves and promotes, are sufficient reasons for asserting the dominion of the people over the waters of the river. The defendants are the servants of the public to construct a great public work; and although private

gain may remunerate them for their efforts, it is, and will continue to be, of great public utility. The judgment of the special term was correct, and should be affirmed.

*By the Court*, BARCULO, J. Certain well established legal principles lie at the foundation of this case, and enable us to dispose of it with very little hesitation. In the first place it is conceded that the right of soil of a riparian owner of lands bounded on the sea, or by navigable rivers, where the tide ebbs and flows, extends only to the ordinary high water mark. *Secondly.* It is clear that the land below high water mark belongs, in England, to the crown, and here, to the state. *Thirdly.* All such navigable rivers are public highways, upon which all persons have a right to navigate to and fro in the prosecution of their lawful business. *Fourthly.* No person has a right to obstruct the navigation by any permanent erection, so as to prevent the passage of vessels up and down the river. *Fifthly.* The state has a right to construct or authorize the construction of wharves, piers, breakwaters and other embankments which tend to improve the navigation, or do not interfere therewith. *Sixthly.* The right of fishing in such waters is a common right, subject, however, to the use of the waters as a highway and to the regulations prescribed by the supreme power.

By an application of these principles we will proceed to resolve the questions presented by the case before us.

The Hudson river is a navigable river, in which the tide ebbs and flows. The land, therefore, below ordinary high water mark opposite to the plaintiff's premises, belongs to the people of the state in their sovereign capacity. They have by their legislature authorized the Hudson River Railroad Company to take possession of a portion of this their land and use it for the purpose of constructing the road. It is not pretended that the railroad obstructs the free use of the channel of the river, or impairs the navigation thereof for general purposes. The road itself partakes of the character of a highway in some respects, and is, at all events, sanctioned by our courts as a public improvement and a public benefit. (*Bloodgood* v. *Mohawk and*

*Hudson Railroad Co.,* 18 *Wend.* 9.)  In all this I am unable to perceive that the legislature has transcended its authority in making the grant to the defendants, or that the defendants have made any improper use of the privileges conferred upon them ; or that the plaintiff could sustain any injury which is recognized by the law as actionable.  If he is incommoded by the road, it is the ordinary case of inconvenience resulting from one proprietor using his land for a purpose which may indirectly work a prejudice to his neighbors.  The plaintiff is in the condition of thousands whose lands are deteriorated in value in consequence of improvements lawfully made upon the lands of others.  One man builds a fine two story dwelling house on his city lot ; and the next year the adjoining owner erects a three story building against it, which towers above, and closes his windows on one side : and the next year the owner of the lot on the other side puts up a stable, or a grogshop, or gambling house ; and, between the two, the first builder finds the market value of his house diminished one half.  But it is *damnum absque injuria.*  Although at first it seems hard, yet a little reflection will satisfy any one that the rule is founded in good sense.  Why should not his neighbors have the same right to use their lots for such lawful purposes as they please, as well as he ?  Or why should he, by first building, be permitted to dictate to them what uses they shall make of their property ?

Indeed the cases go much further than this.  It has been held that a person may, for the purpose of laying the foundation of a house in his own land, dig below the foundation of the adjoining house, although the walls of the latter are thereby cracked and injured, (17 *John.* 92,) or even thrown down ; and that he may pull down his own house, although the adjoining house falls, for the want of the support which it had ; and that he may dig down and carry away the earth from his land, although the adjoining house thereby falls.  (12 *Mass. Rep.* 220.)

So it has been frequently decided that no action lies for consequential injuries resulting to property from the opening and improving streets and highways ; although such improvements often seriously affect and sometimes nearly destroy the value of

certain property. Cutting down a hill may leave a dwelling house, previously erected, perched upon an eminence so as to be almost inaccessible : or, filling up a valley may leave it half buried by the street.

If the land itself is *taken* for the public use, then the constitution requires that compensation must be made. But, for consequential injuries merely, no action will lie. The erection of one class of public buildings, such as a city hall or court house, may enhance the value of all the neighboring property : while a jail, lunatic asylum or hospital may, in like manner, diminish the value of the adjacent buildings. But in the one case no tribute is exacted for benefits, and in the other, no compensation is made for the injuries. They are incidental consequences of the location, of which the owners receive the benefit or suffer the loss, according to their good or bad fortune. The principle running through this doctrine I apprehend to be one of necessity ; for it is obvious that improvements could not be made to keep pace with the spirit of the age, if the precise consequences must in all cases be taken into the account and a moneyed compensation be made to all who are injuriously affected by them. The consequences of a great public improvement, like the Hudson River Railroad, are by no means confined to those who live in its immediate vicinity. They extend far and wide. All the freighting establishments on the river—all the various steamboat interests—must be affected by this road. Even the farmers from the country, for many miles around, who may be accustomed to deposit their produce on its shores, may be more or less incommoded or benefited. The rule therefore that would sanction this action would invite thousands of suits, which must prove fatal to this and all similar enterprises.

I admit that the principle which forbids a compensation for injuries consequent upon improvements, is equally fatal to the doctrine which exacts from the owners of property the value of the incidental benefits which flow from opening and improving streets in their vicinity, although that doctrine has recently been sanctioned by the court of appeals. (*People* v. *Mayor, &c. of Brooklyn,* 4 *Comst.* 419.) But the same book contains clear

and able and sound opinions of Judge Bronson, which establish fully, both by reason and authority, the principle which we apply to the present case. (*Radcliff's Ex'rs* v. *Mayor, &c. of Brooklyn,* 4 *Comst.* 195.) If those two cases are inconsistent, we leave them to be reconciled by those whose business it is.

As we understand the law, this action can not be maintained.

Judgment of the special term affirmed.

[KINGS GENERAL TERM, April 5, 1852. *Morse, Barculo* and *S. B. Strong,* Justices.]